## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

RONNY DARNELL,                              )
                                            )
      Plaintiff,                       )
                                            )
v.                                          )    **Case No. CIV-12-1065-M**
                                            )
JUSTIN JONES et al.,                        )
                                            )
      Defendants.                      )

## REPORT AND RECOMMENDATION

Plaintiff Ronny Darnell, also known as Phoebe Halliwell, a state prisoner appearing pro se, brings this action under 42 U.S.C. § 1983, alleging violations of her Eighth and Fourteenth Amendment rights under the United States Constitution, as well as a state-law negligence claim.[1]  Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings pursuant to 28 U.S.C. § 636(b).

Defendants Justin Jones, Don Sutmiller,[2] Janet Dowling, Katryna Frech, James Smash, Michael Addison, Buddy Honaker, James Keithley, and Joel McCurdy (collectively, "Defendants") have moved for summary judgment on or dismissal of

---

[1] Plaintiff cites the Oklahoma Constitution and Statutes and alleges "States Tor[t] Claims" as to Defendants' alleged deliberate indifference to Plaintiff's serious medical needs, which the undersigned construes as allegations of negligence and of willful and wanton conduct under Oklahoma law.  These allegations are collectively referred to herein as Plaintiff's state-law "negligence claim." *See* Am. Compl. (Doc. No. 85) at 6, 7, 8, 13; Okla. Stat. tit. 76, §§ 1, 5(a), 6; Okla. Unif. Civil Jury Instr. Nos. 9.1, 9.17, 9.51.

[2] The undersigned has corrected the spelling of Defendant Sutmiller's surname herein.

Plaintiff's constitutional claims, to which Plaintiff has responded and Defendants have filed a reply. *See* Defs.' Mot. Summ. J. ("Defs.' MSJ," Doc. No. 96); Pl.'s Resp. to Mot. Summ. J. ("Pl.'s MSJ Resp.," Doc. No. 101); Defs.' Reply (Doc. No. 102). Defendants additionally have filed a corrected Special Report ("S.R.," Doc. No. 83) in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has filed a motion for summary judgment on all claims and a supporting declaration, and Defendants have responded. *See* Pl.'s Mot. Summ. J. (Doc. No. 118); Pl.'s Decl. (Doc. No. 117); Defs.' Resp. (Doc. No. 120). Plaintiff additionally has filed a motion seeking a temporary restraining order or preliminary injunction, to which Defendants have responded and Plaintiff has replied. *See* Doc. Nos. 107, 108, 109, 110. Finally, Plaintiff has submitted two requests to amend her Amended Complaint, to which Defendants have responded, as well as a motion asking the Court to provide certain records to Plaintiff. *See* Doc. Nos. 97, 100, 112, 114, 116.

Having considered the arguments, pleadings, and, where appropriate, evidentiary materials submitted by the parties, the undersigned recommends: (1) that Plaintiff's claims against Defendants Jones, Sutmiller, Addison, Honaker, Keithley, and McCurdy in their official capacities seeking money damages be dismissed; (2) that summary judgment be granted in favor of Defendants on all of Plaintiff's remaining constitutional claims; (3) that Plaintiff's motion for summary judgment be denied; and (4) that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim. The undersigned further recommends that (4) Plaintiff's motion for a temporary restraining order or preliminary injunction be denied; and (5) Plaintiff's remaining

motions be denied, with the exception of Plaintiff's request to substitute current Oklahoma Department of Corrections ("ODOC") Director Robert Patton as the successor party on official-capacity claims asserted against former ODOC Director Justin Jones.

PLAINTIFF'S CLAIMS

The claims asserted by Plaintiff arise out of events occurring at James Crabtree Correctional Center ("JCCC") and Joseph Harp Correctional Center ("JHCC"), the two ODOC prison facilities in which Plaintiff has been incarcerated since August 2008. *See* Am. Compl. at 9-14; Defs.' MSJ Ex. 2 (Doc. No. 96-2) at 1 (reflecting that Plaintiff was transferred from another facility to JCCC on August 21, 2008, and from JCCC to JHCC on April 23, 2013).[3] Plaintiff alleges that she is a male-to-female transgender person with Gender Identity Disorder (or "GID"). *See* Am. Compl. at 9. Plaintiff asserts that she has been denied proper medical care, including hormone replacement, and other accommodations that are necessary for treatment of her serious medical needs associated with GID. *See id.* Plaintiff further asserts that she has been harassed by JHCC and JCCC staff members and has not been permitted to live in a cell with another transgender offender. *See id.* at 9-10.

Plaintiff alleges that Defendants' deliberate indifference with respect to her GID-related medical and mental health needs constituted cruel and unusual punishment in violation of the Eighth Amendment. *See id.* at 10-13.[4] Plaintiff additionally claims that

---

[3] All references to filings use the ECF pagination.

[4] Plaintiff cites the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. §§ 10801-10851, in connection with her constitutional claims.

she suffered a violation of her Fourteenth Amendment equal protection and due process rights in connection with the denial of GID-related treatment and accommodations.  *See id.* at 12, 13.[5]  Finally, Plaintiff asserts a negligence claim under Oklahoma law.  *See id.* at 6, 7, 8, 13.  Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief, to include access to a transgender specialist, the "Real Life Experience" of living life as a woman, and sex reassignment surgery.  *See id.* at 14.[6]

## STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

As held by numerous courts, however, the PAIMI Act authorizes certain protection and advocacy systems to bring suit regarding access to patient records; its provisions do not provide a private cause of action to an individual such as Plaintiff.  *See id.* §§ 10805(a)(1)(B), (C), 10807; *see, e.g.*, *Ind. Prot. & Advocacy Servs. v. Ind. Family & Social Servs. Admin.*, 603 F.3d 365, 374-82 (7th Cir. 2010); *Burke v. N.D. Dep't of Corr. & Rehab.*, No. 1:07-cv-004, 2007 WL 1456217, at *8 (D.N.D. 2007).  *See generally Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-85 (2002) (explaining that a federal statute must confer "specific, individually enforceable rights" upon the person seeking enforcement and evidence an intent to create a private right for these rights to be enforced through a cause of action under § 1983).

[5] Plaintiff also cites the Fifth Amendment in connection with her due process claim.  As a state prisoner, however, her due process challenges implicate her rights under the Fourteenth Amendment, not the Fifth Amendment.  *See, e.g.*, *Parnisi v. Colo. State Hosp.*, No. 92-1368, 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993).

[6] To the extent Plaintiff is suing on account of mental or emotional injury, the damages she may recover under 42 U.S.C. § 1983 are limited absent "a prior showing of physical injury."  *See* 42 U.S.C. § 1997e(e); Am. Compl. at 9 (alleging that staff members "are determined to make her life 'a living Hell," by doing all that they can to push her to the edge, to where she will commit suicide").

56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the non-moving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). While the Court construes a pro se litigant's pleadings liberally, such a litigant nevertheless is held to the same rules of procedure as are binding on other litigants. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" in the record; or

- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).

A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish *all* of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) ("The defendant . . . must

demonstrate that no disputed material fact exists regarding the affirmative defense asserted."). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense, absent which summary judgment should be granted in favor of the defendant. *Id*.

With respect to cross-motions for summary judgment, the Court must evaluate each motion on its own merits, "constru[ing] all inferences in favor of the party against whom the motion under consideration is made." *See Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). Although summary judgment is inappropriate if disputes remain as to material facts, the Court is permitted "to assume that no evidence needs to be considered other than that filed by the parties." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal quotation marks omitted). The Court analyzes each cross-motion for summary judgment separately; "the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (internal quotation marks omitted).

Defendants styled their dispositive motion as one for dismissal or alternatively for summary judgment, and they attached and cited various materials outside of the Amended Complaint and public record to both their motion and their reply. *See* Defs.' MSJ (Doc. No. 96) (citing Special Report and additional exhibits throughout); Defs.' Reply (Doc. No. 102) (same). In turn, Plaintiff's response in opposition refers to Defendants' motion as an alternative request for summary judgment, cites outside

evidence, and is itself accompanied by an item of documentary evidence. *See* Pl.'s MSJ Resp. (Doc. No. 101). Further, Plaintiff herself expressly moved for summary judgment and supplied additional documentary evidence to that end. *See* Pl.'s Mot. Summ. J. & Exs. 1, 2 (Doc. Nos. 118, 118-1, 118-2); Pl.'s Decl. (Doc. No. 117).

It is evident that Plaintiff was on notice to present and did present all material pertinent to Defendants' dispositive motion and that Plaintiff desired the Court to consider materials outside of the pleadings in ruling on both parties' dispositive motions. Accordingly, the undersigned has treated the motion as one for summary judgment with respect to Defendants' assertion of the affirmative defense of lack of administrative exhaustion. *See* Fed. R. Civ. P. 12(d), 56(c)(1); *Whitesel v. Sengenberger*, 222 F.3d 861, 866 (10th Cir. 2000).

## ANALYSIS

A.  *Whether Official-Capacity Defendants Are Entitled to Dismissal of Damages Claims on the Basis of Eleventh Amendment Immunity*

Citing the Eleventh Amendment of the U.S. Constitution, Defendants Jones, Sutmiller, Addison, Honaker, Keithley, and McCurdy [7] move to dismiss Plaintiff's claims to the extent they seek money damages from Defendants in their official capacities. *See* Defs.' MSJ at 29-31; Fed. R. Civ. P. 12(b)(1), 12(b)(6). The Court therefore is obligated to address whether these Defendants enjoy immunity from suit. *See U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 942 (10th Cir. 2008) (noting that if a state defendant raises the

---

[7] Defendants Jones, Sutmiller, Addison, Honaker, Keithley, and McCurdy are sued in both their official and individual capacities. *See* Am. Compl. at 2, 3, 6, 7, 8. Defendants Dowling, Frech, and Smash are sued only in their individual capacities. *See id.* at 4, 5.

issue, "addressing the threshold jurisdictional matter [is] obligatory"); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000) (holding that Eleventh Amendment immunity presents a jurisdictional bar when effectively asserted). In moving to dismiss for lack of subject matter jurisdiction, the relevant Defendants present a "facial" attack on the Amended Complaint—questioning its sufficiency but not the veracity of factual allegations upon which subject matter jurisdiction may depend. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); Defs.' MSJ at 29-31. Accordingly, for the purposes of this subject matter jurisdiction analysis, the undersigned presumes the Amended Complaint's factual allegations to be true. *See Holt*, 46 F.3d at 1002.

Pursuant to the doctrine of sovereign immunity, as adopted in the Eleventh Amendment, a federal court may not hear a claim brought by a private citizen against a U.S. state unless the immunity is abrogated by Congress or unequivocally waived by the state. U.S. Const. amend XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 65 (1996). The State of Oklahoma has not waived its relevant Eleventh Amendment immunity from suit in federal courts. *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998); *see also Hemphill v. Jones*, No. CIV-11-1192-HE, 2012 WL 7059643, at *3 (W.D. Okla. Oct. 31, 2012) (report and recommendation of Roberts, J.), *adopted*, 2013 WL 501353 (W.D. Okla. Feb. 11, 2013). Nor has Congress abrogated state immunity through enactment of 42 U.S.C. § 1983. *See Quern v. Jordan*,

440 U.S. 332, 342-45 (1979). Thus, the State of Oklahoma's Eleventh Amendment immunity from § 1983 claims in federal court remains intact.

Eleventh Amendment immunity applies to any state agencies considered to be "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *see also ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *abrogated on other grounds as recognized in Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). A defendant's status as an arm of the state is a question of federal law, but courts make this determination by analyzing the "nature of the entity created by state law." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (internal quotation marks omitted). Here, although not named as a defendant, the relevant state agency is ODOC because the relevant Defendants were employed by that agency during the circumstances giving rise to this lawsuit. *See* Am. Compl. at 2-8; Defs.' MSJ at 30. The Tenth Circuit has stated that it considers ODOC an arm of the State of Oklahoma. *See Eastwood v. Dep't of Corr. of State of Okla.*, 846 F.2d 627, 631-32 (10th Cir. 1988) (agreeing with party's concession that ODOC was entitled to Eleventh Amendment immunity as an arm of the state). Furthermore, ODOC's powers, budgetary responsibilities, and funding establish that it is an arm of the State of Oklahoma. *See, e.g.*, Okla. Stat. tit. 57, §§ 502-504, 505-508, 509, 510; *id.* tit. 62, §§ 34.42, 34.50-.52, 34.57. Thus, ODOC is protected from suit in federal court by Eleventh Amendment immunity. *See also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765-66 (2002); *ANR Pipeline Co.*, 150 F.3d at 1187.

Such Eleventh Amendment immunity extends to claims against ODOC employees who are sued in their official capacities. "[I]t is well-established that 'the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.'" *Peterson v. Lampert*, 499 F. App'x 782, 786 (10th Cir. 2012) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)); *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *cf. Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). Accordingly, to the extent Plaintiff's claims seek monetary relief from Defendants Jones, Sutmiller, Addison, Honaker, Keithley, and McCurdy in their official capacities, these claims are barred and should be dismissed because, based on Eleventh Amendment immunity, the Court lacks subject matter jurisdiction over such claims.

   B. *Whether Defendants Are Entitled to Summary Judgment as a Result of Their Affirmative Defense That Plaintiff Failed to Exhaust Administrative Remedies*

Defendants seek summary judgment on the basis of their affirmative defense that Plaintiff's claims are barred because Plaintiff did not, prior to commencing this lawsuit, exhaust her available administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), codified in pertinent part at 42 U.S.C. § 1997e(a). *See* Defs.' MSJ at 17-19; S.R. (Doc. No. 83) at 4-6, 8; Defs.' MSJ Ex. 4, Aff. of Mike Murray (Doc. No. 96-4) ¶ 3 (dated Sept. 30, 2013). *See generally Jones v. Bock*, 549 U.S. 199, 219-20 (2007) ("All [courts] agree that no unexhausted claim may be considered.").

1. The PLRA

The PLRA provides that no action under 42 U.S.C. § 1983 may be brought by a prisoner regarding conditions of confinement "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006) (explaining that Section 1997e(a) requires "proper exhaustion"—i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (internal quotation marks omitted)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.

2. The Oklahoma Department of Corrections' Offender Grievance Process

ODOC has adopted an Offender Grievance Process, OP-090124, through which a prisoner in its custody may seek formal administrative decisions or answers to complaints. *See* S.R. Ex. 3, OP-090124 (eff. May 24, 2011) (Doc. No. 83-3). The ODOC Grievance Process requires an inmate initially to attempt informal resolution of the complaint by speaking to an appropriate staff member within three days of the relevant incident. *Id.* § IV(A). If the inmate is dissatisfied after this initial attempt, then he or she may submit a written "Request to Staff" within seven days of the incident. *Id*. § IV(B). This first informal level may be bypassed only if the complaint involves a sensitive topic or an emergency. *Id*. § VIII(A).

The next level of the ODOC Grievance Process is the filing of a formal grievance. If dissatisfied with the response received from a Request to Staff, the inmate may file a

grievance within fifteen days of the incident or of the date of the response to the Request to Staff, whichever is later. *Id.* § V(A)(1). The grievance is submitted to either the facility's Reviewing Authority or, if medical in nature, the Correctional Health Services Administrator ("CHSA"). *Id.* § V(B)(1). This level may be bypassed only if the grievance involves a sensitive topic concerning the Reviewing Authority or CHSA. *Id.* § VIII(A)(4).

The final level of the ODOC Grievance Process is the filing of a grievance appeal. If dissatisfied with the response to a grievance, the inmate may file a grievance appeal within fifteen days of the date of the response. *Id.* § VII(A), (B). The grievance appeal is submitted to the Administrative Review Authority ("ARA") or, if a medical grievance, the Chief Medical Officer ("CMO"). *Id.* § VII(B). The ruling of the ARA or CMO is final and concludes the administrative remedy procedures available through ODOC. *Id.* § VII(D).

The ODOC Grievance Process includes mechanisms for prisoners to seek relief if they fail to receive a response from a Request to Staff or a grievance. If there has been no response to a Request to Staff "in 30 calendar days of submission," the inmate may file a grievance with the facility's Reviewing Authority on the ground of non-responsiveness. *Id.* § IV(B)(7). If there has been no response to a grievance within 30 days of its submission, the inmate may send a grievance to the ARA or the CMO on the ground of non-responsiveness. *Id.* § V(C)(4).

3.  Plaintiff's Efforts to Exhaust Administrative Remedies

Plaintiff undisputedly submitted several documents to prison officials, purportedly utilizing the ODOC Grievance Process framework, that requested relief on the primary complaint—refusal of requested treatment and accommodations for GID—underlying Plaintiff's Eighth Amendment and Fourteenth Amendment claims.  *See* Am. Compl. at 3, 11-12, 14; Am. Compl. Ex. 2 (Doc. No. 85-2); Defs.' MSJ at 17-19; Defs.' MSJ Ex. 3 (Doc. No. 96-3); S.R. Exs. 2, 7 (Doc. Nos. 83-2, 83-7).  The relevant documents in the record and the undisputed material facts show that Plaintiff thereafter failed to exhaust her administrative remedies with respect to these claims, as outlined below.

On April 19, 2012, Plaintiff submitted a Request to Staff asking why she had been denied treatment for GID.  S.R. Ex. 2, at 4; Am. Compl. at 11.  Plaintiff received an answer on April 24, 2012, from Defendant Smash, a psychologist at JCCC, stating that "[n]o one is being treated in DOC for this" as far as he knew, asking Plaintiff not to ask about this again, and telling Plaintiff that she could seek mental health services.  *Id.*; S.R. Ex. 9 (Doc. No. 83-9); *see also* S.R. Ex. 6, ODOC Access to Health Care Process (Doc. No. 83-6).  Unsatisfied, Plaintiff filed Grievance No. 12-40 seeking to have her requested GID treatment directed by prison authorities.  S.R. Ex. 2, at 2; Am. Compl. at 11.  On May 8, 2012, Plaintiff was denied relief on this Grievance by Defendant Frech, a Correctional Health Services Administrator.  S.R. Ex. 2, at 3; Am. Compl. at 11; S.R. at 5-6.

Plaintiff then sought to appeal this grievance response through Grievance Appeal No. 12-2007, submitted on or about May 14, 2012.  S.R. Ex. 2, at 6-7.  Because

Plaintiff's Grievance Appeal was medical in nature, it was required to be submitted to the Chief Medical Officer. *See* OP-090124 §§ V(A)(5), V(B)(1), VII(B); S.R. Ex. 2, at 6. Plaintiff's Grievance Appeal, however, was submitted to the ARA and, therefore, was returned unanswered to Plaintiff on that basis on June 5, 2012.[8] S.R. Ex. 2, at 7; Am. Compl. at 11. The returned Grievance Appeal stated: "Medical related grievances must be submitted to Chief Medical Officer: Don Sutmiller, D.O. 2901 N. Classen Blvd., Suite 200, Oklahoma City, Ok. 73106." S.R. Ex. 2, at 7.

It is undisputed that Plaintiff never resubmitted the Grievance Appeal to the CMO as expressly instructed. *See* Am. Compl. at 11-12; Defs.' MSJ at 12, 19; Defs.' MSJ Ex. 4, Aff. of Mike Murray ¶ 3. Instead, Plaintiff filed this lawsuit. Am. Compl. at 12.

### 4. Plaintiff's Failure to Properly Exhaust Administrative Remedies

As outlined above, Plaintiff submitted several documents but has not filed a timely, procedurally correct grievance and grievance Appeal as required for prison officials to reach the merits of Plaintiff's complaint and for determination of Plaintiff's § 1983 claims by the Court. *See* 42 U.S.C. § 1997e(a). The mandatory administrative remedy exhaustion requirement, *see Jones*, 549 U.S. at 211, applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and

---

[8] According to Plaintiff's unverified Amended Complaint, the ARA rather than the CMO received her Grievance Appeal as a result of prison staff following their policy to fax inmates' grievance appeals to the recipient. *See* Am. Compl. at 3, 11. Even if this allegation is taken as true, however, the fact that prison officials assisted Plaintiff in transmitting the Grievance Appeal is immaterial in light of Plaintiff's undisputed failure, discussed herein, to properly re-submit the Grievance Appeal as specifically instructed by the ARA.

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust administrative remedies, Plaintiff may not file "an untimely or otherwise procedurally defective grievance or appeal"; rather, Plaintiff must "us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *See Woodford*, 548 U.S. at 83-84, 90 (internal quotation marks omitted).

Here, there is no reasonable dispute that Plaintiff did not *properly* present her relevant grievances to prison authorities, "in accordance with the applicable procedural rules," such that the authorities were able to address the issues on the merits. *See id.* at 88, 90. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. As support for the entry of judgment to Defendants based upon the shortcomings outlined above, Defendants have submitted sworn affidavits from an official in the office of the CMO and an official in the office of the ARA. *See* Defs.' MSJ Ex. 4, Mike Murray Aff.; S.R. Ex. 8, Mike Murray Aff. (Doc. No. 83-8) (dated Nov. 28, 2012); Defs.' MSJ Ex. 3, Kerry Minyard Aff. (Doc. No. 83-3); Fed. R. Civ. P. 56(c). Each official states that he has reviewed the inmate grievance records for Plaintiff. *See* Defs.' MSJ Ex. 4, Mike Murray Aff.; Defs.' MSJ Ex. 3, Kerry Minyard Aff. The CMO official states that the medical administrative review authority "has not any received any grievance appeals, or other correspondence," from Plaintiff during the relevant time period. Defs.' MSJ Ex. 4, Mike Murray Aff.; S.R. Ex. 8, Mike Murray Aff. The ARA official states that the office received the misdirected Grievance Appeal described above from Plaintiff and that this submission was returned to Plaintiff

unanswered. Defs.' MSJ Ex. 3, Kerry Minyard Aff. In addition, Defendants have submitted affidavits from the JCCC Special Report Writer and from the JCCC Warden, Defendant Dowling, attesting to the accuracy and completeness of the Special Report. *See* S.R. Ex. 10, Charles Mayfield Aff. (Doc. No. 83-10); S.R. Ex. 11, Janet Dowling Aff. (Doc. No. 83-11).

Plaintiff does not dispute Defendants' account of events with respect to their affirmative defense, and she does not dispute that her Grievance Appeal was medical in nature and so should have been submitted to the CMO. *See* S.R. Ex. 3, OP-090124 §§ V(A)(5), V(B)(1), VII(B). Plaintiff does provide an additional fact: Plaintiff contends that when her Grievance Appeal was returned unanswered by the ARA, Plaintiff then filed a Request to Staff asking that the Grievance Appeal be forwarded to the CMO by prison staff. This Request to Staff form is attached to the Amended Complaint. Am. Compl. at 11; Am. Compl. Ex. 2. According to Plaintiff, "she waited 20 working days with no response [to the Request to Staff], so she waited another 20 working days, with no response, so at that Point she started her 42 U.S.C. § 1983 [action]." Am. Compl at 11-12.

There is no contention—other than the unverified allegation that Defendants merely failed to fax a document as requested—that prison officials prevented Plaintiff from exhausting her administrative remedies. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."). To the contrary, Plaintiff

affirmatively contends that she did fully exhaust her remedies by performing those actions outlined above—i.e., by submitting a request that prison officials direct her Grievance Appeal to the proper office on her behalf. *See* Am. Compl. at 3, 11-12; Pl.'s MSJ Resp. at 4. According to Plaintiff, the prison officials "should have corrected" the mistake, but because they failed to do so, "Plaintiff did exhaust all of her Administrative Remedies." Am. Compl. at 3; Pl.'s MSJ Resp. at 4.

Plaintiff's argument is unavailing. Pursuant to OP-090124, it is the inmate's responsibility, rather than the prison officials', to submit a grievance appeal in accordance with applicable requirements. *See* S.R. Ex. 3, OP-090124 §§ VII(A), (B)(1)(a). Indeed, the Offender Grievance Process directs that such an appeal "must be submitted in a separate envelope and mailed through the U.S. Postal Service," rather than transmitted via fax or in some other manner. S.R. Ex. 3, OP-090124 § VII(B)(1)(d). The ARA specifically informed Plaintiff of her error and provided the proper mailing address, *see* S.R. Ex. 2, at 7, and Plaintiff makes no allegation that she was somehow prevented from mailing her Grievance Appeal to the CMO as directed by the ARA and prescribed by OP-090124 § VII(B)(1)(d).

Further, even if Plaintiff's Request to Staff regarding re-sending the appeal had been a proper avenue for Plaintiff to follow, there is no contention or indication from the record that Plaintiff grieved the lack of response to this Request to Staff, although offenders are expressly informed of their obligation to do so. *See* OP-090124 § IV(B)(7) ("If there has been no response [to a Request to Staff] in 30 calendar days of submission, the offender may file a grievance . . . ."). To the contrary, Plaintiff specifically concedes

that she waited 40 days and, having received no response, proceeded to file her lawsuit in federal court. Am. Compl. at 11-12.

The steps taken by Plaintiff at the institutional level do not amount to proper exhaustion pursuant to the express terms of OP-090124. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim . . . ." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002); *see also Brewer v. Mullin*, 130 F. App'x 264, 265 (10th Cir. 2005) ("Simply presenting a defective or non-complying grievance . . . does not constitute exhaustion of remedies."). Further, the fact that Plaintiff's deficient grievance appeal was returned unanswered does not excuse Plaintiff from the requirement that she exhaust administrative remedies. The ODOC Grievance Process expressly authorizes prison officials to return grievance appeals unanswered if the inmate fails to follow instructions. *See, e.g.*, S.R. Ex. 3, OP-090124 § VII(B)(5) ("Grievances and grievance appeals . . . which are not filed in accordance with this procedure will be returned unanswered."); *see also Little*, 607 F.3d at 1249 (noting that "the prison's procedural requirements define the steps necessary for exhaustion"). "[D]efendants did not make the exhaustion process unavailable to [Plaintiff] by returning [her] documents unanswered." *See Thomas v. Parker*, 609 F.3d 1114, 1118 n.2 (10th Cir. 2010).

A pro se litigant's pleadings are liberally construed and "held to a less stringent standard" than those drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This liberal construction, however, does not relieve Plaintiff from carrying her burden in opposing a motion for summary judgment. Having reviewed both parties'

submissions, Plaintiff's declarations and supporting documents are insufficient to "demonstrate with specificity the existence of a disputed material fact." *See Hutchinson*, 105 F.3d at 564. The undisputed material facts show that Plaintiff did not *properly* submit a grievance appeal as required to complete the ODOC Grievance Process. *See Woodward*, 548 U.S. at 90; *cf. Jackson v. Workman*, 391 F. App'x 724, 725 (10th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies when he had not filed administrative appeal). Substantial compliance with ODOC's "'deadlines and other critical procedural rules'" is not sufficient under the PLRA. *Craft v. Null*, 543 F. App'x 778, 779 (10th Cir. 2013) (quoting *Woodford*, 548 U.S. at 90); *Jernigan*, 304 F.3d at 1032. Further, a plaintiff's disagreement as to the appropriateness of a particular procedure does not excuse the plaintiff's obligation to comply with the available process. *See Thomas*, 609 F.3d at 1119.

None of the evidence in the record, even when construed in favor of Plaintiff as the nonmoving party on Defendants' Motion for Summary Judgment, creates a genuine question of fact that would prevent the conclusion that Plaintiff did not exhaust her administrative remedies prior to commencing these civil rights claims against Defendants. "[E]xhaustion is mandatory under the PLRA[,] and . . . unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Accordingly, the undersigned finds that Defendants' affirmative defense of nonexhaustion of administrative remedies is established as a matter of law, and, therefore, summary judgment should be entered in

favor of Defendants on Plaintiff's claims against them.[9]

*C. Whether Plaintiff Is Entitled to a Preliminary Injunction*

Plaintiff has filed a motion requesting a temporary restraining order and preliminary injunction against Defendants. This Motion seeks injunctive relief on the same grounds raised in the claims of Plaintiff's Amended Complaint and addressed herein. *See* Pl.'s Mot. Prelim. Inj. (Doc. No. 107); Pl.'s Mem. (Doc. No. 108).[10] Plaintiff's Motion specifically requests that Defendants be required to provide Plaintiff treatment and accommodations for her diagnosis of GID, including specific hormone replacement therapy and Plaintiff's purchase of a brassiere. *See* Pl.'s Mot. Prelim. Inj. Ex. 1 (Doc. No. 107-1).

As set forth above, Plaintiff's GID-related constitutional claims are in part subject to dismissal as a result of Eleventh Amendment immunity and, as to the remainder, subject to summary judgment for failure to satisfy the PLRA's exhaustion requirements.

---

[9] In light of this recommendation, the undersigned need not address in detail the alternative arguments in support of summary judgment raised by the parties.

[10] Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b). Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney." *See* Fed. R. Civ. P. 65(b)(1). Because Defendants had both notice and an opportunity to respond to Plaintiff's Motion for Preliminary Injunction, the Court should treat the request for a TRO as superseded by the accompanying request for a preliminary injunction. *See, e.g.*, *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Charles Alan Wright et al., *supra*, § 2951, at 276-77 (3d ed. 2013).

These findings render Plaintiff's parallel request for injunctive relief moot. Regardless, Plaintiff has not met her burden to establish the requirements for a preliminary injunction.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For entry of a preliminary injunction, the applicant generally must satisfy four elements: (1) a substantial likelihood that he or she will prevail on the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

A preliminary injunction is characterized as "mandatory" if it affirmatively requires the nonmovant to act in a particular way and, as a result, places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction. *Id.* at 1261; *Little*, 607 F.3d at 1251. Here, Plaintiff seeks relief that is mandatory: the entry of Plaintiff's primary requested form of relief (medical treatment, including hormone replacement therapy) would affirmatively require Defendants to act in a particular way and would place this Court in a position where it would be required to provide ongoing supervision. *See* Pl.'s Mot. Prelim. Inj. Ex. 1; *Schrier*, 427 F.3d at 1261. Plaintiff therefore must meet a "heightened standard" on all four required elements. *See Little*, 607 F.3d at 1251. The preliminary injunction "must

be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *See Schrier*, 427 F.3d at 1259. Plaintiff further must make a "strong showing" both with regard to likelihood of success on the merits and with regard to the balance of harms in order to obtain this disfavored interim relief. *Id.* at 1261.

For the reasons set forth above, Plaintiff cannot show "a substantial likelihood of success on the merits" with respect to her constitutional claims, which are echoed in the Motion for a Preliminary Injunction. *See Kikumura*, 242 F.3d at 955; *Church v. Okla. Corr. Indus.*, No. CIV-10-1111-R, 2011 WL 4376222, at *13 (W.D. Okla. Aug. 15, 2011) (report and recommendation of Couch, J.), *adopted*, 2011 WL 4383225 (W.D. Okla. Sept. 20, 2011), *and aff'd*, 459 F. App'x 806 (10th Cir. 2012); *Huffstutler v. Jones*, No. CIV-12-125-M, 2012 WL 2994268, at *5 (W.D. Okla. June 27, 2012) (report and recommendation of Purcell, J.), *adopted*, 2012 WL 2994591 (W.D. Okla. July 20, 2012). It follows that Plaintiff indisputably cannot meet a "heightened standard" or make a "strong showing" with regard to the likelihood of success on the merits of this claim, as required for the Court to order Plaintiff's requested mandatory injunction. *See Schrier*, 427 F.3d at 1261; *Little*, 607 F.3d at 1251; Pl.'s Mem. at 1-6; Pl.'s Reply (Doc. No. 110) at 1-10.

In addition, Plaintiff has not met her heightened burden of demonstrating that the requested injunctive relief is not adverse to the public interest—the relevant public interest here being deference to prison officials' proper administration of their prison facilities. A federal court considering a motion for injunctive relief affecting the

conditions of a prisoner's confinement must give substantial weight to the adverse impact on public safety and on prison operation. 18 U.S.C. § 3626(a)(2); *Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012). The Supreme Court has declared that courts are not to substitute their judgment on matters of institutional administration for the determinations made by prison officials. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). Accordingly, courts hesitate to interfere with prison officials' decisions concerning the day-to-day administration of prisons, to which deference must be accorded unless they violate the Constitution or federal law. *See Turner v. Safley*, 482 U.S. 78, 84-86 (1987).

Even if Plaintiff could succeed on her constitutional claims, the assertions in her Motion do not justify the Court immediately mandating that Plaintiff's requested medical treatment be undertaken, which would interfere with prison management. *See* Pl.'s Mot. Prelim. Inj. Ex. 1. Granting the relief Plaintiff seeks would require this Court to intrude directly into the affairs of state prison administration, which for important policy reasons is a step courts should be reluctant to take. *See Turner*, 482 U.S. at 84-86; *cf. Stephens*, 494 F. App'x at 912 (affirming denial of requested injunctive relief as "overbroad and more intrusive than necessary").

For all of these reasons, Plaintiff's Motion for a Preliminary Injunction should be denied. *See, e.g.*, *Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming denial of temporary restraining order where "the relief requested was not consistent with the public interest"); *Church*, 2011 WL 4376222, at *13; *Huffstutler*, 2012 WL 2994268, at *5.

### D. *Plaintiff's Motions to Amend Her Pleading*

Plaintiff has filed a letter in which she requests to amend the Amended Complaint to add class action allegations and claims pursuant to Federal Rule of Civil Procedure 23. Pl.'s Letter (Doc. No. 97); *see also* Fed. R. Civ. P. 15(a)(2). Plaintiff additionally seeks appointment of class counsel pursuant to Rule 23(g) based upon the class certification order that presumably will follow the requested amendment. *See id.*; Fed. R. Civ. P. 23(g); *see also* Pl.'s MSJ Resp. at 5-6.

Although a court "should freely give leave" to amend a pleading "when justice so requires," Plaintiff's request should be denied as futile in light of the undersigned's recommendation that dismissal or summary judgment be granted to Defendants on all of Plaintiff's constitutional claims. *See* discussion *supra*; Fed. R. Civ. P. 15(a)(2). "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *E.spire Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004) (internal quotation marks omitted). Even assuming Plaintiff could satisfy the explicit prerequisites for bringing a class action, *see* Fed. R. Civ. P. 23(a), Plaintiff's requested amendment would not cure the fatal deficiency of her pleading—namely, Plaintiff's failure to properly exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) for presentation of her GID-treatment claims in a federal lawsuit.

Plaintiff additionally has filed a request to add Robert Patton as a Defendant in this lawsuit. Pl.'s Mot. to Amend (Doc. No. 112). Plaintiff's Amended Complaint sues

Defendant Justin Jones, the former ODOC Director, in both his official and individual capacities. *See* Am. Compl. at 2. On January 17, 2014, Robert Patton succeeded Justin Jones as the ODOC Director. Plaintiff asserts that she wrote to Director Patton "trying to receive help for her Condition in exchange for dropping the suit against his employees" and that Director Patton replied, "*NO*, because you are already in the suit, therefore I can't do anyth[i]ng for you." Pl.'s Mot. to Amend at 1.

To the extent Plaintiff wishes to add a new claim against Director Patton, and add Director Patton as a new defendant, in Director Patton's individual capacity, this request should be denied in light of the undersigned's recommendation that this case be disposed of in its entirety in Defendants' favor. Additionally, the substance of Plaintiff's proposed new claim—i.e., that Director Patton refused to grant Plaintiff's request for treatment in exchange for her dismissing this lawsuit—does not reasonably support a nonfrivolous civil rights claim upon which relief could be granted. *See* Pl.'s Mot. to Amend at 1; 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1).

However, insofar as Plaintiff seeks to substitute Director Patton for Defendant Jones on official-capacity claims, such a substitution is expressly contemplated by Federal Rule of Civil Procedure 25(d), and Plaintiff's request should be granted. "[W]hen officials sued in [their official] capacity die or leave office, their successors automatically assume their roles in the litigation." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); Fed. R. Civ. P. 25(d). Although the undersigned refers to "Defendant Jones" herein, Director Patton should be substituted as Defendant on Plaintiff's official-capacity claims in any later proceedings.

*E. Plaintiff's Motion for Production of Documents*

Plaintiff requests that the Court supply her with the records from a Tenth Circuit case allegedly regarding Bradley Manning, also known as Chelsea Manning. Pl.'s Mot. Prod. (Doc. No. 116). This request should be denied. First, it is not the Court's proper role to assist a party in mustering evidence for its summary judgment motion. *Cf.* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if *the movant* shows that there is no genuine dispute as to any material fact and *the movant* is entitled to judgment as a matter of law." (emphasis added)). Second, Plaintiff's request would be rendered moot upon entry of judgment for Defendants as recommended herein.

*F. Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiff's State-Law Claim*

Because Plaintiff's Amended Complaint alleges no viable federal claim, and because diversity jurisdiction is neither alleged nor established, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law negligence claim. *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); Am. Compl. at 6, 7, 8, 13.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment (Doc. No. 96) be GRANTED as follows: Plaintiff's claims for money damages against Defendants Justin Jones, Don Sutmiller, Michael Addison,

Buddy Honaker, James Keithley, and Joel McCurdy in their official capacities should be dismissed without prejudice, and summary judgment should be entered for all Defendants on all remaining constitutional claims. Plaintiff's Motion for Summary Judgment (Doc. No. 118) should be DENIED. The undersigned further recommends that Plaintiff's pending motions for a preliminary injunction (Doc. No. 107) and for production of documents (Doc. No. 116) be DENIED. Finally, Plaintiff's requests to amend the Amended Complaint (Doc. Nos. 97, 112) should be DENIED, other than permitting the substitution of current ODOC Director Robert Patton for former ODOC Director Justin Jones on all official-capacity claims in any further proceedings.

NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 15th day of September, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned magistrate judge in the present case.

ENTERED this 29th day of August, 2014.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE